vening parking spaces find such a use less pleasing to the senses than the possible uses for zone "B-2" Highway and General Business as set out *supra* or for the following conditional uses requiring board approval: "Billboards and advertising Signs, Agriculture, Wholesale Business, Printing and Publishing, Animal Hospitals and Clinics, Bakeries and Dairies, Commercial Entertainment Facilities, Commercial recreational Facilities, Building Materials Sales and Storage"?

For the foregoing line of reasoning relating the facts to the case law of Ohio, the demand of the plaintiff for a permanent injunction enjoining the defendant from the violation of the 1971 Zoning Resolution of Mercer County, Ohio, is denied.

Counsel for the defendant shall prepare a judgment entry accordingly.

IDEAL MILK Co. *v.* BLEVINS ET AL.

[Cite as Ideal Milk Co. v. Blevins
(1973), 37 Ohio Misc. 76.]

(No. CIV-73-128—Decided August 1, 1973.)

Court of Common Pleas of Scioto County.

*Mr. Chester P. Fitch,* for plaintiff.
*Mr. Walter C. Lytten* and *Mr. Richard L. Eisnaugle,* for defendants.

MARSHALL, J. Plaintiff, a corporation engaged. in the dairy products business, had entered into distributorship contracts with each of the defendants. This action was instituted to compel performance of re-purchase provisions and to enjoin defendants from "competing with the plaintiff, either directly or indirectly, enjoining them from acting as agent for any other dairy for a period of time as defined in the contract and within a radius of 40 miles from his distributorship." A temporary restraining order was issued by Judge Canter. Hearing was held on plaintiff's application for a preliminary injunction at which time it was stipulated by and between the parties "that the court, from the evidence submitted, shall determine the issue of validity of the non-competitive clause in the contracts entered into between the plaintiff and the defendants and render a declaratory judgment upon said issue."

The determination of this issue, of course, requires judicial construction of the pertinent provisions in each contract. The contracts with the defendants: Elmer Blevins, Benjamin Fuggit, Kenneth Jones, Raymond Martin and Paul Larry Cooper contain the following identical covenant: "The distributor agrees not to compete directly with Ideal or to act as an agent or be connected in any way with the dairy business for a period of two years, beginning with the termination of the distributorship."

The law of Ohio on this subject was clearly stated by the Supreme Court of the case of *Extine* v. *Williamson Midwest* (1964), 176 Ohio St. 403, in the syllabus, as follows:

"1. In determining the validity of a covenant or agreement in restraint of trade, each case must be decided on its own facts, and a reasonable balance must be maintained among the interests of employers, employees and the public.

"2. An agreement in restraint of trade may be divisible, that is, subject to the application of the doctrine of partial validity, in which event any unreasonable limitation or restriction may be stricken from the contract, leaving the remainder thereof binding upon the parties.

"3. An indivisible covenant or agreement in restraint of trade which imposes unreasonable restrictions or limitations as to time or area is invalid."

Some of the defendants, prior to entering into the distributorship contracts had been employees of the plaintiff, delivering milk to plaintiff's customers over specified routes. Under the contracts, they agreed to purchase plaintiff's trucks, pay for the routes and purchase merchandise exclusively from the plaintiff. It is obvious that the non-competition clauses were inserted to prevent the solicitation of plaintiff's customers by the defendants in the event that a distributorship was terminated.

We believe that the partial validity or "blue pencil" test should apply to these contracts. The portion of the agreement providing that the defendants shall not "compete directly with Ideal . . . for a period of two years beginning with the termination of the distributorship" is reasonable and should be enforced. There is no ambiguity as to the import of that phrase. Direct competition, of necessity, would be limited to the geographical area of the business operations of the plaintiff. That portion of the clause by which the defendants agreed not to "act as an agent or be connected in any way with the dairy business . . . " is unreasonable for the reason that it has no limitation whatsoever as to space.

The sub-contract with Lee Roy Blevins (incorrctly listed in the caption of this case as Roy Lee Blevins) contains a non-competition clause which is valid in its entirety. Its restrictions are reasonable both as to space and time, and are fair to the interests of the parties and the public.

It is, therefore, declared that all of the defendants, except, Lee Roy Blevins are bound by their agreement not to compete directly with the plaintiff for a period of two years after termination of any distributorship; but are freed from the restraint against acting as an agent for or being connected in any way with the dairy business. The defendant, Lee Roy Blevins, is bound by the express terms of the non-competition clause in his contract.